ROGERS, J.
 

 Allen Patterson, Henry Woods, and Pearl Myers, all negroes, and Mrs. Nancy Stewart Thompson, a white woman, were jointly indicted for the murder of D. G. Thompson, the husband of Mrs. Nancy Stewart Thompson, on August 31, 1932.
 

 After. a preliminary hearing before the trial judge on the question of his present sanity, Allen Patterson was ordered to trial on the charge set forth in the indictment.
 

 On the trial, defendant confessed that, because Mrs. Thompson offered him $500 from the insurance money on Thompson’s life, and a home for life, he went to the Thompson home at night, armed with Thompson’s gun, with which he had been provided by Mrs. Thompson; that he shot Thompson through the window as he lay asleep in the bed; that he jumped from the gallery at a certain place, crossed a certain ditch at a particular place; and hid part of the gun under a certain house.
 

 After telling the law officers about the killing, 'defendant admitted his tracks at the house and the ditch, pointing out both places, and took the officers to the place whore he hid part of the gun, where it was found. The other part of the gun was never found, defendant stating that, after the shooting, he had given it to a codefendant.
 

 Defendant rested his case mainly on his special plea of insanity “at the time of the commission of the alleged offense.”
 

 The trial resulted in an unqualified verdict of guilty, and defendant, in accordance with the verdict, was sentenced to death. • From the verdict and sentence, defendant appeals.
 

 Defendant reserved numerous bills of exception, only four of which a.ppear in the record. In this court, defendant filed an assignment of eleven alleged errors committed in the court below.
 

 The only complaint of defendant that we find necessary to notice is his complaint, presented under bill of exception No. 3, of the ruling of the trial judge that defendant was presently sane and was able to appreciate the nature of the proceeding against him and to assist his counsel in presenting his defense.
 

 At the outset of the case, counsel for defendant gave notice in open court that de
 
 *443
 
 fendant would urge insanity as a defense to_ the charge against him, and counsel requested the trial judge to appoint experts to examine defendant and report their findings on the trial. The trial judge, in response to this request, appointed a lunacy commission composed of Drs. S. O. Turner and J. B. Stanley, experts connected with the East Louisiana Hospital for the Insane. This commission, “after a thorough, complete mental examination and observation and also a serological examination and report,” filed a written report that the defendant is insane.
 

 The trial judge, having been informed that the lunacy commission would find the defendant insane, concluded that it was his duty under the.first paragraph of Act No. 136 of 1932, p. 449, amending and re-enacting article 2GT of the Code of Criminal Procedure, to cause an inquiry to be made as to the question of defendant’s present insanity. And, in order to save time, the trial judge appointed the parish coroner, Dr. W. L. Fisher, and Dr. S. F. Hatchette as a commission to examine tlie defendant, with a view of ordering his commitment to the asylum in the event the court found the defendant insane on the trial of the question of present insanity.
 

 On the day fixed for defendant’s trial, and before it began, and after the lunacy commission had presented their written report to the trial judge declaring that defendant was insane, the four doctors and the trial judge, sitting as a member of the commitment commission, submitted the defendant to a further examination. On the completion of this examination, at which defendant’s counsel were not present, a contradictory insanity hearing was had under the provisions of Act No. 136 of 1932, supra. At this hearing four witnesses testified, namely, Drs. S. O. Turner and J. B. Stanley, members of the lunacy commission, and Drs. W. L. Fisher and S. F. Hatchette, members of the commitment commission. All the witnesses were examined by counsel for the state and for the accused and by the trial judge. At the conclusion of the hearing, the trial judge pronounced defendant presently sane, and lie was' immediately tried and convicted on the charge set forth in the indictment.
 

 The trial judge assigned the following reasons for holding that defendant was presently sane, viz.:
 

 “In a proceeding of this kind, we start out with the presumption of the law that the man is sane, until the contrary appears by a fair preponderance of the evidence. - I was present at the examination of this defendant, with all of the doctors -who have testified, and participated in the examination myself. I quite agree with Dr. Hatchette when he testified that nothing the defendant said, taken alone, indicated that he was insane. He conclusively showed a fair knowledge of what was right and wrong. He specifically said it was wrong to steal, wrong to murder, and for some of the things that he has done he expressed regret and sorrow, and said that unless something 'happened, he would be damned in the future for it.
 

 “The defendant told a very connected story, in connection with his own case — coherent and well connected, both as to events and time. The defendant told me, in the presence of the doctors, that he knew he was on trial for his life, and that he would probably, or might be, hung for what he had done. If he answers his counsel as well as he answered
 
 *445
 
 the Doctors and me in this examination, I see no reason in the world why he cannot assist in his defense.
 

 “I believe the man to be sane in that degree which is required by law as a condition precedent to trial.
 

 “I express no opinion as to the man’s sanity as a defense in this ease, but I have no -hesitancy in saying that the man at this time appreciates the nature of the proceeding against him, and can assist his counsel in his defense as well as a man might reasonably be expected to do under the circumstances.”
 

 Counsel for defendant excepted to the ruling of the trial judge and to his consideration, in making the ruling, of the examination of defendant out of the presence of his counsel and of any statements or facts not elicited on the trial of the question of defendant’s present insanity.
 

 At the insanity hearing three of the four witnesses examined, viz., Drs. Turner, Stanley and Hatchette testified, unequivocably, that the defendant is insane, suffering from a form of mental deterioration known as neurosyphilis, which is caused by syphilis, and that he was not in a condition to understand the proceeding against him nor to assist his counsel in his defense. These three witnesses qualified as experts on mental diseases. The fourth witness, Dr. Fisher, the parish coroner, testified, over defendant’s objection (no bill reserved), that he was not qualified as an expert, that defendant was capable of sensibly answering any question his counsel might ask him. The witness admitted that he was not an expert on insanity eases, but he had assisted in the examination of many such cases since he has been coroner. He saw defendant only once, which was-during the time defendant was privately examined by Drs. Turner, Stanley, Hatchette, the trial judge, and himself. His examination of defendant was necessarily of the most perfunctory character.
 

 It is apparent from the reasons assigned for his ruling on the insanity hearing that the trial judge did not accept as correct the opinions of Drs. Turner and Stanley, the members of the lunacy commission, and of Dr. Hatchette, a member of the commitment commission, that defendant is presently insane because of the legal presumption that defendant is sane, the opinion of Dr. Fisher that defendant is sane, and his own opinion to the same effect, formed by him as a result of the private examination given defendant immediately prior to the hearing on the question of defendant’s sanity.
 

 The presumption is that every person is sane until the contrary appears, and this presumption relieves the state in a criminal prosecution of the necessity of proving the sanity of the defendant; but the presumption is not applicable where a lunacy commission finds and reports that the defendant is insane. Article 425 of the Oode of Criminal Procedure provides that: “The report of every Commission of Lunacy shall be prima facie evidence of the facts recited in such report and of the correctness of the findings of such commission.” This evidence must be overcome by competent evidence, which we do not think was done in this case.
 

 The trial judge intensively examined Drs. Turner, Stanley, and Hatchette with the view, it seems to us, from our examination of the record, of having them confirm the opin
 
 *447
 
 ion which he himself had formed from the previous examination of defendant that defendant was not presently insane. This examination consisted mainly in interrogating the witnesses as to the answers given by defendant to the questions propounded to him by the trial judge. But throughout their examination the witnesses insisted that defendant was presently insane. Dr. Hatchette, to whom the trial judge refers by name in his reasons for judgment, testified, in answer to the district attorney, that: “From the physical examination, serological findings and mental examination, I do not believe him (defendant) capable of advising his counsel in his own interest.” It is true the witness, in answer to a question of the trial judge, stated he could not point out a single instance which would indicate that defendant did not have sufficient mentality to advise his counsel. But he did say that he drew his conclusions from the sum total of all defendant’s answers, .and that his conclusions were based on his experience with mental cases of the same .sort.
 

 According to the Binet-Simon standard intelligence test, the defendant has an intelligence quotient of 75 per cent., which is that •of a. high-grade moron. Such an intelligence rating does not, of itself, indicate insanity. But, as testified by Drs. Turner and Stanley, taking in connection with defendant’s neurosyphilis symptoms and his mental deterioration as determined by serology, it does indicate that defendant is insane.
 

 There is no class of cases in which the use of expert testimony is so general and almost indispensable as that in which the issue is sanity or insanity. While not conclusive, the opinions of competent physicians are of great value in assisting the court or the jury in reaching a correct conclusion on this issue.
 

 In this case, defendant himself was not placed on the stand at the insanity hearing, and the only testimony adduced in the proceeding was that of the four physicians to whom we have hereinbefore referred. They were disinterested witnesses. And the weight of their testimony undoubtedly shows that defendant is insane. Unless we are willing to wholly disregard this testimony and arbitrarily substitute pur own judgment for that of the witnesses, which we are not willing to do, we must accept their opinions and approve their findings. Our own examination of the record has satisfied us that defendant is insane and unable to appreciate the nature of the proceeding against him and to assist in the presentation of his defense.
 

 For the reasons assigned, the conviction and sentence herein appealed from are annulled, and it is now ordered that this case be remanded, and that the court below, as provided by Act No.' 136 of 1932, take the proper steps to commit the defendant Allen. Patterson to the proper institution.