315 So.2d 772 (1975)
STATE of Louisiana, Appellee,
v.
Mitchell Phillip FLORES, Appellant.
No. 55894.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*773 John M. Madison, Jr., Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Richardson, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Flores was convicted of attempted aggravated rape, La.R.S. 14:27, 42, and sentenced to twenty years at hard labor.
The two principal assignments of error are both based on Flores' mental incapacity. Because of this incapacity, it is contended that Flores could neither assist his counsel in his defense nor have made an informed waiver of his right to remain silent during police interrogation. Since we find that Flores did not have the requisite mental capacity to assist in his defense, we do not reach the second issue.

(1)
Pursuant to an application by the defendant, the trial court appointed a psychiatrist and a psychologist to a sanity commission to determine "whether said defendant has a mental disease or defect, as a result of which the defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense".[1] See La.C.Cr.P. art. 643.
Both experts appointed by the court found the defendant mentally incapable of assisting in his defense. At the contradictory hearing on the issue, La.C.Cr.P. art. 647, they testified as to his mental incapacity. The only lay evidence introduced was that of the defendant's father, who testified to the defendant's lifelong history of mental inadequacy.
Their testimony was opposed by that of the coroner. The trial court accepted the coroner's evaluation and found that "if the defendant desires to, he can cooperate with counsel and assist in his own defense".

(2)
Article 641 of our 1966 Code of Criminal Procedure provides: "Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
Under the jurisprudence, the determination of incompetency to stand trial is tested by whether, by reason of mental deficiency, the accused can understand the proceedings against him and assist in conducting his defense in a rational manner and to a rational degree, including an ability to recall past events and to present to counsel the facts which ought to be evaluated for presentation to the jury. State v. Augustine, 252 La. 983, 215 So.2d 634 (1968); State v. Yaun, 237 La. 186, 110 So.2d 573 (1959); State v. Swails, 223 La. 751, 66 So.2d 796 (1953); State v. Boice, 153 La. 621, 96 So. 281 (1923). See also Official Revision Comment b, Article 641, La.Code of Criminal Procedure (1966).
*774 The burden is on the accused to establish by a clear preponderance of the evidence that he is so mentally deficient that he lacks capacity to understand the proceedings against him and to assist in the conducting of his defense in a rational manner. State v. Marks, 252 La. 277, 211 So.2d 261 (1968).
Our decisions recognize that the trial judge's determination of capacity to assist defense is entitled to great weight, especially where the evaluation of credibility or the resolution of conflicting well-founded medical testimony is concerned. Nevertheless, where (as here) the medical testimony of mental incapacity greatly preponderates, the trial judge's refusal to accept it is subject to reversal on appeal if no sound reasons are shown for its rejection. See, e.g., State v. Patterson, 176 La. 440, 146 So. 17 (1933). See also State v. Augustine, cited above.

(3)
The two members appointed to the sanity commission were a psychiatrist and a clinical psychologist of twenty-five years' experience. The former was a deputy coroner and the latter was the director of the Shreveport Mental Health Clinic.
The latter conducted objective scientific tests which confirmed some moderate brain dysfunction of a physical nature. Both experts found the accused, age 18, to be mildly mentally retarded, with a mental age of eleven.
Based upon their examinations, these experts found: that the accused had a limited ability to remember past events, to comprehend, or to articulate; that he was unable to distinguish between his fantasies and actual past events; and that he was subject to psychotic episodes and inability to relate to events around him when under stress. Both experts felt that their testing had excluded any reasonable possibility of malingering or exaggeration on the part of the accused.
The parish coroner testified in opposition to these specialists. The main thrust of his testimony was that the accused knew the difference between right and wrong and should be held to be criminally responsible. As to mental incapacity, the coroner admitted that the accused was of subnormal intelligence, that he had related fantasies (such as that he had finished Byrd High School, although he had actually dropped out after a few months), that he did not (for instance) seem to know the name of his own lawyer, that his answers were not always responsive to the questions asked, and that the accused was not very communicative.
Nevertheless, based on his 63 years of general practice (some 55 of them as the parish coroner), the doctor felt that, from his single interview with the defendant, the accused could understand the proceedings and cooperate with his attorney in his defense, if only he tried. The doctor based this conclusion upon his extensive experience serving on sanity commissions and with mental problems in general practice.
However, when cross-examined by the accused's counsel for specific reasons for his conclusion, the coroner seemed to indicate that it was based upon the accused's own claim that he could understand and assist.[2] The specifics of his examination *775 tended to corroborate the mental inadequacies found by the two specialists who composed the sanity commission and who found the accused incompetent because of mental defect.
The record reflects no sound reason to reject the greatly preponderating testimony of the members of the sanity commission to the effect that the accused was presently subject to such mental deficiency as to be mentally incapable of assisting in his own defense.
We therefore conclude that the trial court erred in not determining that the defendant lacked present mental capacity, in not suspending further proceedings in the case, and in not committing him to a proper state mental institution for custody, care, and treatment so long as the lack of capacity continues. La.C.Cr.P. art. 648.
As we stated in State v. Augustine, cited above, at 215 So.2d 638-39: "A conclusion that one is mentally retarded or defective or diseased does not of itself establish present insanity. However, when mental retardation or defect or disease, alone or in combination, is so severe that a defendant is unable to understand the object, nature, and consequences of the proceedings against him, to communicate with counsel in a meaningful manner, to recall and relate the circumstances connected with the offense, to testify in his own behalf, and to assist reasonably and rationally in a defense of the charge against him, that defendant is, within the contemplation of our law, presently insane and unable to stand trial. . . . It would do violence to our concept of due process and our sense of justice to force to trial one so mentally defective."

Decree
For the reasons assigned, the conviction and the sentence of the defendant are annulled and set aside, and the matter is remanded for proceedings consistent with the law and the views expressed herein.
Reversed and remanded.
NOTES
[1] These experts were also appointed to examine the defendant as to his mental condition at the time of the offense. Distinctions are drawn between mental incapacity to assist in the defense, La.C.Cr.P. art. 641 (denoted by the former code of criminal procedure, La.R.S. 15:267 (1950), as "present insanity"), and insanity at the time of the offense, La.C.Cr.P. arts. 650-53. One of them is that the former merely prevents the trial of the defendant until he has the capacity to proceed, and it is tried by the judge alone; while the latter is a matter of defense before the jury, entitling the accused (if the defense is sustained) to an acquittal of criminal intent. See, e.g., State v. Swails, 223 La. 751, 66 So.2d 796 (1953).

The experts reported that Flores knew the difference between right and wrong, except under stress. The defendant does not here question the trial jury's assessment of the medical evidence as indicating sanity at the time of offense under jurisprudential standards now applied.
[2] See the coroner's testimony under cross-examination at Tr. 59-60:

"Q Doctor, does he have the capacity to understand the proceedings against him?
"A He said he did, but I didn't ask him what they were. He said he did.
"Q Does he have the capacity to assist in his own defense?
"A I asked him that question and he said his own answer was that he could.
"Q Doctor, your acceptance of Mr. Flores ability to assist in his defenseyou base that conclusion on the fact that he said he could, is that correct?
" A For that basic reason, yes. I don't know what the offense is and I didn't ask him to elaborate because he wouldn't. And he just said that was his affair.
"Q But you have no independent basis on which to render that conclusion?
"A Mr. Madison, he didn't even give me your name or know the name ofhe might have known but he wouldn't tell me. But I asked him had he talked with you and he said he had and I said do you think you can tell him about it and help him with your case and he said he could.
"Q But you didn't try to get him to talk about the case?
"A I didn't know what the case was about. I didn't ask him." (Italics ours.)