340 So.2d 195 (1976)
STATE of Louisiana
v.
Carvel Frank MORRIS, Jr.
No. 57775.
Supreme Court of Louisiana.
October 14, 1976.
*197 Elodie K. Parker, Jena, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., George F. Griffing, Special Counsel, Jonesville, for plaintiff-appellee.
MARCUS, Justice.
Carvel Frank Morris, Jr. was indicted by the grand jury of the Parish of Catahoula for the crime of aggravated rape on September 28, 1974, in violation of La.R.S. 14:42. After trial by jury, he was found guilty as charged and was subsequently sentenced to death. On appeal, defendant relies upon nine assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in denying his motion to quash grounded on the allegation that he was denied the right to a speedy trial.
Defendant was arrested on September 28, 1974 for aggravated rape committed on the *198 same date. He was indicted by the grand jury on October 31, 1974. Upon defendant's request, arraignment was delayed until November 14, 1974. A motion for change of venue was heard on January 6, 1975. On the same date, a motion to quash the indictment, based upon the unconstitutionality of the selective process by which women were excluded from the grand jury, and a motion to suppress evidence were filed and set for hearing on February 17, 1975. In view of the decisions handed down by the United States Supreme Court in Taylor v. Louisiana[1] and Daniel v. Louisiana[2] in January of 1975, the state decided to present this matter to a new grand jury to be convened on February 20, 1975. On February 17, 1975, defendant applied for a writ of habeas corpus in which he again attacked the indictment returned on October 31, 1974 on the ground of systematic exclusion of women from the grand jury. Hearing set for that date on the motions to quash and suppress were upset by mutual consent of the state and defendant. The grand jury returned a new indictment on February 20, 1975. On February 27, 1975, defendant's application for habeas corpus was heard and denied; defendant entered a plea of not guilty and not guilty by reason of insanity; and the state moved for the appointment of a sanity commission. Due to conflict in the opinions of the members of the sanity commission, the state moved, on March 17, 1975, for an additional examination; on March 20, 1975, defendant sought an independent examination by a psychiatrist. Hearing on defendant's mental capacity to proceed was held on April 7, 1975, and the trial judge ruled that he was presently sane and able to stand trial. Trial was set for May 12, 1975. On April 24, 1975, defendant filed a motion to quash the indictment returned on February 20, 1975, alleging that the delay occasioned by having a new indictment returned deprived him of a speedy trial. Motions for change of venue and suppression of evidence were also filed on April 24, 1975. These motions were heard and denied on May 5, 1975. The court also ruled on the sufficiency of the state's answers to defendant's motion for a bill of particulars on that date. Trial commenced on May 12, 1975.
Determination of whether defendant's sixth amendment right to a speedy trial has been violated cannot be determined by an inflexible rule based upon a fixed time period, but rather on a balancing test, in which the conduct of both the prosecution and the defendant are weighed. Four of the factors to be assessed by the courts in determining, in each instance, whether a defendant has been denied a speedy trial are: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Brown, 326 So.2d 839 (La.1976); State v. Harris, 297 So.2d 431 (La.1974).
In the instant case, the delay of eight months between arrest and trial was not unreasonable, especially in light of the seriousness of the crime and the various pretrial motions filed by defendant. The reasons for the delay were not shown to have been occasioned by any procrastination or unwillingness on the part of the state to try the case. The delay was at least partly caused by defendant's motion to quash the October indictment. This action precipitated his reindictment in February, 1975, by a grand jury selected pursuant to the newly enacted provisions contained in article 5, section 33 of the Louisiana Constitution of 1974.[3] No complaint was registered, despite the filing and hearing of many motions urged on defendant's behalf, until April 24, 1975, at which time the trial had already been set for May 12, 1975. All of defendant's motions were considered promptly after filing. Defendant neither showed nor claimed any prejudice by reason *199 of the delay. The delay itself is the only claim of prejudice.
Considering the facts of this case, we find no violation of defendant's sixth amendment right to a speedy trial. Hence, the trial judge correctly denied defendant's motion to quash.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in denying his motions for a change of venue. The victim of the aggravated rape was a retired school teacher who was prominent and highly respected in the community. Consequently, defendant argues that the pretrial publicity precluded him from obtaining a fair and impartial trial in the Parish of Catahoula.
There were two hearings conducted on these motions, at which defendant called a number of witnesses, most of whom were either related to him or were his friends. The witnesses generally testified that, based upon their conversations with people in the area, they did not believe that defendant could get a fair trial. The main reason given for this conclusion was the prominence of the victim in the community. Many of the witnesses admitted their bias in favor of defendant because of their friendship with him. The testimony was that, while many people thought he was guilty, some could not believe that defendant could commit such a terrible crime. Most of the witnesses were unable to express an opinion as to what the attitude of the people would be if confronted with the actual evidence of the case. All agreed that, although they had read about the offense in the newspaper, they had not seen or heard any coverage of it on television or radio.
According to the managing editor of the Catahoula News-Booster, who was also employed by the Concordia Sentinel, four news items covering this offense, which occurred on September 28, 1974, appeared in the News-Booster. The first one appeared on page 11 of the first section on October 3. It contained a factual account of the events leading up to defendant's arrest. The article also mentioned three other incidents under investigation. The second article (dated October 10) appeared on page 7 and was entitled "Grand Jury Meets Here Monday." The article gives equal prominence to three matters which the district attorney intended to present to the grand jury (the present case was second mentioned). On October 31, another article appeared on page 1, stating that the grand jury would hear additional witnesses in two cases when it reconvened, one of which was the case herein. Finally, on November 7, an article appeared on page 6 in which it was stated that the grand jury had indicted defendant for aggravated rape and attempted murder. The article also covered another matter being investigated by the grand jury. On October 23, the Concordia Sentinel (circulation in Catahoula Parish of only fifty or sixty) also carried a story of the offense.
It was brought out at the hearings on these motions that Catahoula is a rural parish consisting of several diverse and separate communities. The witnesses who did not consider that defendant could obtain a fair trial were generally not familiar with other portions of the parish. Rather, their opinions were primarily based upon conditions existing around Harrisonburg where the offense occurred. On the other hand, the editor of the newspaper testified that he was in contact with other parts of the parish and, in his opinion, there was no prejudice in the public mind in the parish as a whole. The jury was selected from the entire parish.
The grounds for change of venue are set out in article 622 of the Code of Criminal Procedure as follows:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether *200 the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
To warrant a change of venue, the burden is upon the defendant to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. Article 622 requires a showing of more than mere knowledge by the public of facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained. State v. Stewart, 325 So.2d 819 (La.1976); State v. Dillard, 320 So.2d 116 (La.1975); State v. Monk, 315 So.2d 727 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Leichman, 286 So.2d 649 (La.1973); State v. Richmond, 284 So.2d 317 (La.1973). Moreover, the granting or denial of a change of venue rests in the sound discretion of the trial judge, and his ruling denying a venue change will not be disturbed unless evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. Stewart, supra; State v. Dillard, supra.
In denying the change of venue, the trial judge noted that it must be considered that Catahoula is a small rural parish and any crime of this magnitude would be known to the people. However, he correctly found no proof of prejudice in the public mind that a fair and impartial trial could not be obtained in that parish. The newspaper articles were not inflammatory or sensational in nature. Rather, they were factual accounts of the offense and the grand jury action. Accordingly, under the evidence presented, we cannot say that the trial judge abused his discretion in denying the motion for change of venue.
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 6
Defendant contends that the trial judge erred in denying his motion to suppress clothing (shirt and pants) worn by him on the night of the alleged rape and given to the sheriff by his mother. Defendant alleges that this evidence, secured without a search warrant, was inadmissible because his mother was ignorant and uneducated and did not know the consequence of giving his clothing, containing blood, to the sheriff.
At the hearing on the motion to suppress the clothing, the sheriff testified that he went to the home of defendant's mother on the day of the arrest. Defendant had been temporarily residing there. Defendant's mother told the sheriff that he did not need a search warrant, as "anything she could help with she would be happy to." She voluntarily gave him the shirt and pants worn by defendant on the night of the crime. On the next morning after the arrest, defendant's mother called the sheriff and asked him to come and exchange one of the articles of clothing she had previously given to him for the reason that she had given him the wrong article. The sheriff then returned to the mother's home, and she gave him the "right garment." The mother was not called to testify at the hearing. It is evident that no "search" was in fact conducted. Rather, the clothing was voluntarily given to the sheriff by the mother at her home. Defendant's claim of his mother's lack of education does not affect the uncontradicted testimony of the sheriff that she was cooperative and wished to give her son's clothing to the authorities.
First, it is doubtful that a "search and seizure" occurred on the day the sheriff came to the defendant's mother's house and accepted the clothing at the good-faith invitation of a person with dominion over the premises and property. State v. Chase, 329 So.2d 434 (La.1976). Even if it were a search, consent is one of the well-recognized exceptions to the search warrant requirement of the fourth amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The search was made on the basis of the lawful consent given by defendant's mother in her own *201 home. State v. Chase, supra; State v. Bartley, 329 So.2d 431 (La.1976); State v. Forbes, 310 So.2d 569 (La.1975).
For the foregoing reasons, we conclude that the trial judge correctly denied defendant's motion to suppress the clothing given to the sheriff by defendant's mother.
Assignments of Error Nos. 3 and 6 are without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 7
Defendant contends that the trial judge erred in overruling his objections to the admission of evidence of the beating inflicted on the victim by the assailant. Specifically, he refers to his objections to the testimony of the victim at the preliminary hearing and to that of the coroner at trial relating to the injuries sustained by the victim during the course of the rape. Defendant argues that this evidence was not relevant to the charge of aggravated rape for which he was being tried. Rather, it was relevant only to the pending charge against him for attempted murder.
We find no merit in this contention. Testimony of the beating of the victim was relevant to corroborate the victim's testimony that the rape was conducted by force, an essential element of aggravated rape. Hence, the objected-to testimony was admissible in evidence. La.R.S. 14:42; La.R.S. 15:435 and 441. In addition, the evidence of the beating, occurring during the course of the rape, was also a part of the res gestae. To constitute res gestae, the "circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjuction with it one continuous transaction." What forms part of the res gestae is always admissible in evidence. La.R.S. 15:447-448; State v. Curry, 325 So.2d 598 (La.1976); State v. Hatch, 305 So.2d 497 (La.1975). The rulings of the trial judge were correct.
Assignments of Error Nos. 4 and 7 are without merit.

ASSIGNMENT OF ERROR NO. 5
The objection which forms the basis of this assignment of error arose in the following context. A deputy sheriff testified that he had found a small piece of wood on the doorstep of the victim's house. Although the piece of wood appeared to come off of one of the three dining room chairs in the victim's house, his examination of the chairs revealed that it did not. A fourth chair (in a broken condition) had been found in a ditch about a mile and a half from where defendant lived. On cross-examination, defense counsel asked the deputy sheriff the following questions:
Q. What is your explanation of what became of the whole chair? That the piece came off of?
A. I didn't quite understand you.
Q. You said there were three chairs there and a piece of a chair out on the steps and you sent a good chair and that piece of chair
At this point, the trial judge removed the jury. It was his impression that perhaps the question might necessitate an answer that part of the chair was used in the beating of the victim, and this might be a violation of State v. Prieur, 277 So.2d 126 (La.1973) because it referred to another offense.[4] Defendant argued that, since the answer might create reversible error, the trial judge erred in depriving him of a reversal. For the first time on appeal, defendant urges that the court commented on the evidence.
Initially, there was no comment on the evidence, for the jury was removed while the colloquy occurred. Defendant's argument that he was deprived of a reversible error by the trial judge's action in not allowing the answer to the question is without merit. In any event, any reference to *202 the beating of the victim (if such had been elicited by the question) would have been admissible as being relevant to the crime charged, as well as part of the res gestae. (See discussion in previous assignment of error.)
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends that the trial judge erred in permitting the bloody clothes of the victim to be introduced in evidence. Defendant does not attack the foundation laid by the state, but rather the prejudicial effect of its admission.
There is no merit in this contention. The victim testified that she was beaten during the course of the crime. The clothes were properly identified as being related to the crime. They were offered in evidence to corroborate the victim's testimony that her resistance was overcome by force, an essential element of the crime charged. La.R.S. 14:42. The clothing was thus relevant and its probative value outweighed any prejudicial effect it might have had on the jury. La.R.S. 15:435 and 441; State v. Groves, 311 So.2d 230 (La.1975); State v. Edgecombe, 275 So.2d 740 (La.1973); State v. Alexander, 252 La. 564, 211 So.2d 650 (1968). The ruling of the trial judge was correct.
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends that the trial judge erred in denying his motion for a new trial. First, defendant reurges a number of objections which have been reviewed under previous assignments of error. For the reasons set forth therein, we find no merit in these contentions. It is additionally urged that the trial judge erred in finding that defendant had sufficient mental capacity to understand the proceedings against him or to assist in his defense. Defendant also alleges that there was no evidence that a rape had been committed. Finally, it is urged that, in view of the fact that the jury had to be transported to a motel in Jonesville because of the remodeling of the court-house in Harrisonburg, it was possible for someone to have contacted the jurors while the deputies in charge were asleep.
Following defendant's plea of not guilty and not guilty by reason of insanity, the court appointed a sanity commission composed of two members to determine defendant's mental capacity to proceed.[5] La.Code Crim.P. art. 643. Due to conflict of opinion expressed in the reports filed with the court by the two members of the commission, both the state and defendant moved for the appointment of an additional expert. In accordance with article 647, a contradictory hearing was held to determine defendant's mental capacity to proceed.
Dr. Julien C. Kennedy, member of the sanity commission, found defendant to have "a lowered level of intelligence either borderline normal or mild mental retardation." He determined defendant's IQ in the area from 52 to 67. While finding that defendant could distinguish between right and wrong at the time of the offense, he did not believe that he was able to assist his counsel in his defense. Dr. Walter L. Guillot, Jr., the other member of the sanity commission, was of the opinion that defendant was able to understand the charges against him and could most probably assist in his defense. He opined that defendant could distinguish between right and wrong at the time of the offense. He estimated defendant's IQ in the range of 65 to 70. Dr. Chester A. Williams, Jr., the expert who examined defendant for the state, had formerly been coroner for East Baton Rouge Parish for seventeen years and worked eight years with the Mental Health Center in Baton *203 Rouge. He concluded that defendant was not mentally retarded and was able to understand the proceedings against him and to assist in his defense. He estimated his IQ in the range from 80 to 90. Dr. W. Sidney Easterling, defendant's expert, did not testify, but his report was filed in evidence. The report indicates that Dr. Easterling found defendant to be "mildly mentally retarded" and, while finding that he was able to distinguish right from wrong at the time of the offense, he did not consider that he was able to assist counsel in his defense. Lay testimony was introduced at the sanity hearing consisting of people who had recently been in contact with defendant. The lay testimony consisted of the following: the jailer; the jailer's wife, who served two meals a day to defendant in his cell; the pastor of the Baptist Church, who had frequent personal contact with defendant while he was incarcerated; the sheriff, who stated that when arrested defendant gave an alibi; the registrar of voters, who testified that defendant himself filled out a form to register to vote; and the principal of the high school, who testified that the records show defendant at age twelve had an IQ of 70, received grades which were generally satisfactory and passed to the fourth grade. This testimony was to the effect that his behavior had been normal in all respects. After the hearing, the trial judge stated that, while defendant might be slightly retarded, it was his opinion that he was capable of understanding the proceedings against him and assisting in his defense.
Under the provisions of article 641 of the Code of Criminal Procedure:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.
Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. State v. Augustine, 252 La. 983, 215 So.2d 634 (1968). A conclusion that one is mentally retarded, defective or diseased does not of itself establish present insanity. It is only when the retardation, defect or disease, alone or in combination, is so severe that an accused is unable to understand the proceedings against him and to assist in his defense that an accused is, within the contemplation of law, presently insane and unable to stand trial. State v. Flores, 315 So.2d 772 (La. 1975); State v. Augustine, supra. The burden is on the accused to establish by a clear preponderance of the evidence that he is so mentally deficient that he lacks capacity to understand the proceedings against him and to assist in the conducting of his defense in a rational manner. State v. Marks, 252 La. 277, 211 So.2d 261 (1968). It is well recognized that the trial judge's determination of mental capacity to assist at trial is entitled to great weight, especially where the evaluation of credibility or the resolution of conflicting well-founded medical testimony is concerned. State v. Flores, supra.
After carefully reviewing both the medical and lay testimony, we cannot say that the trial judge abused his discretion in concluding that defendant failed to establish by a clear preponderance of the evidence that he was so mentally deficient that he lacked capacity to understand the proceedings against him and to assist in his defense. Hence, the trial judge correctly determined that defendant was presently able to stand trial.
The contention that there is no proof that a rape had been committed is equally without merit. The victim testified that she believed she had been raped. The testimony of the doctor who examined her substantiated this testimony, and the vaginal smear taken from the victim showed evidence of sperm. Certainly, this constitutes some evidence that the victim had been raped.
Defendant's final contention that someone might have contacted the jurors at the motel while the deputies in charge were asleep is likewise without merit. At the hearing on the motion for a new trial, several of the deputies in charge of the sequestered jury testified that, because of the remodeling of the courthouse in Harrisonburg, they transported the jurors in vehicles *204 driven by deputy sheriffs to the Catahoula Courts, a motel about ten miles away in Jonesville, where the jurors spent the two nights that the trial was in progress. Two male jurors were assigned to a room, while the female juror was given a room to herself. The doors of the motel rooms were locked and the phones disconnected. The deputies were with the jurors at all times except when the jurors retired to their rooms, at which time the deputies took shifts guarding the rooms from positions where they could fully observe the entrances to the rooms. The testimony was that there was at least one deputy on duty at all times. There was no evidence contrary to the testimony of these deputies. Hence, defendant's contention has no basis in fact and is rejected as being without substance.
In sum, Assignment of Error No. 9 is without merit.
After the appeal was taken in this matter, the United States Supreme Court decided Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) declaring unconstitutional the mandatory death sentence for first degree murder. La.R.S. 14:30. The crime of aggravated rape also imposes a mandatory death penalty. La.R.S. 14:42. In Selman v. State of Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the United States Supreme Court held that Louisiana mandatory death penalty for aggravated rape suffers from the same constitutional infirmities as set forth in Roberts. In State v. Craig, No. 57,706, 340 So.2d 191 (La.1976) and State v. Lee, 340 So.2d 180 (La.1976) this court under the mandate of Selman and Roberts set aside and vacated the death sentences, but finding no other reversible error, affirmed the convictions. For reasons set forth in these opinions, we remanded the cases to the trial court for resentencing of defendants to the most serious penalty for a lesser included offense at the time of the commission of the crime which, in those cases, was simple rape (La.R.S. 14:43) carrying a penalty of imprisonment at hard labor for not less one nor more than twenty years. In the instant case, the crime was committed on September 28, 1974. The legislature obviously intended to impose the most serious penalty available under the law. In this case, although there is a range of from one to twenty years, the most serious penalty is twenty years at hard labor. Therefore, in accordance with our decisions in Craig and Lee, we must vacate and set aside the imposition of the death penalty even though we affirm the conviction and remand the case to the trial court for resentencing.[6]

DECREE
For the reasons assigned, the conviction is affirmed and the case is remanded for resentencing of the defendant.
SUMMERS, J., concurs in the conviction but dissents from the holding on penalty for the reasons assigned in my dissent in State v. Lee, La., 340 So.2d 180.
DIXON, J., dissents as to sanity issue.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents from the majority opinion on the issue of the defendant's mental capacity to stand trial, but concurs in the holding respecting the penalty imposed.
CALOGERO, Justice (dissenting).
In its affirmance of this conviction, the majority finds no merit in defendant's complaint that the trial judge erred when he overruled defendant's motion for a new trial, a motion grounded on the fact that he lacked the mental capacity to understand the proceedings against him or to assist in his defense. I believe that the trial judge erred in his decision, and that the defendant's conviction should be overturned.
Defendant was examined by three psychiatrists. Two of them unequivocally stated that Morris would be unable to communicate *205 with his counsel in a meaningful manner, that he would be unable to testify in his own behalf, and that he would be unable to assist reasonably and rationally in a defense of the charge against him. The third psychiatrist testified that he considered defendant retarded, with a mental disease or defect. He could not say that he was sure Morris had the capacity to proceed, but felt it was "possible" that he could understand the proceedings against him. He stated that he felt Morris "had some capacity" to help in his own defense, but did not have a "substantial amount of capability" to do so. The only doctor who was certain that Morris could understand the charge against him and assist in his defense was the coroner of East Baton Rouge Parish who is not a psychiatrist. Even he admitted that Morris was "not very bright," had a short attention span, and seemed indifferent to his situation.
Certainly this expert testimony establishes that defendant Morris lacked the capacity to understand the proceedings against him and to assist in the conduct of his defense. The trial judge erred when he ruled otherwise, and I believe that this Court should reverse Morris' conviction.
NOTES
[1] 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
[2] 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).
[3] The effective date of this new constitution was midnight, December 31, 1974.
[4] According to the discussion outside the presence of the jury, the trial judge was concerned that the answer to defense counsel's question might put the answer in the posture of the answer given to defense counsel's questioning in State v. Foss, 310 So.2d 573 (La.1975) which was held to be reversible error.
[5] The members of this commission were also appointed to examine defendant as to his mental condition at the time of the offense. This is a matter for the jury to decide and is not at issue in this assigned error which concerns solely defendant's mental capacity to understand the proceedings against him or to assist in his defense.
[6] The views herein expressed as to the proper penalty to be imposed represent that of the majority of this court. They do not reflect the views of the author of this opinion. See my dissent in State v. Craig, No. 57,706, 340 So.2d 191 (La.1976).