393 So.2d 670 (1981)
STATE of Louisiana
v.
Freddie HOLMES.
No. 67360.
Supreme Court of Louisiana.
January 26, 1981.
*671 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
M. Michele Fournet, Asst. Public Defender, for defendant-appellant.
DIXON, Chief Justice.
Defendant was convicted of armed robbery and two counts of attempted armed robbery, violations of R.S. 14:64 and R.S. 14:27. On this appeal, it is argued that defendant did not have the capacity to stand trial, and that the case should be remanded to initiate another sanity commission.
The defendant requested the district court to appoint a sanity commission prior to trial. C.Cr.P. 642. Two licensed physicians examined defendant. One of them, Dr. Silva, is a practicing psychiatrist. He examined the defendant on November 4, 1979. The other physician, Dr. Landry, is a parish coroner. His examination was conducted on October 23, 1979. These two doctors testified at the hearing to determine the defendant's capacity to proceed on November 14, 1979.
Dr. Silva testified that it was "almost impossible to carry [on] a rational conversation" with the defendant; he characterized the defendant's answers during the examination as uncooperative and unresponsive. The gist of Dr. Silva's findings is contained in the following testimony:
"... if [the defendant] behaved with his counsel the way he behaved with me, obviously, he could not assist counsel. The question was, [was it] a volitional thing or not? I could not make a differentiation."
In short, Dr. Silva found that he could not reach a conclusion as to the defendant's ability to stand trial, because he was unable to determine whether defendant's uncooperativeness and ostensible disorientation resulted from a mental incapacity, or were part of a deliberate effort to avoid trial. Dr. Silva recommended that defendant be subjected to "a more prolonged examination;" his own examination was said to have lasted no more than half an hour.
Dr. Landry's testimony was substantially in accord with Dr. Silva's. He reported that defendant "kept rambling on and on about unrelated events" and was otherwise uncooperative:
"So, I was unable to really do a sanity hearing on him. He would not answer questions."
While Dr. Landry strongly suspected that defendant was malingering, and intentionally being unresponsive, he testified that he did not know whether defendant was not able or whether he simply was not willing to cooperate. Dr. Landry, too, felt that defendant should be subject to "longer observation of his mental status."
*672 The district judge then called the defendant to the stand (over objection) and asked him a wide variety of questions, such as the defendant's age, his education, his family background, his work experience, his knowledge of voodoo and his alleged conversations with ghosts. The defendant gave his age as twenty-one; according to his wife, he is thirty-two. Defendant stated that he did not know what month it was; he knew his wife's name but could not recall her age; he was less than certain of what wages he earned when he worked as a welder. When asked, "Do you know what you're charged with?" defendant replied "indecent exposure." Nevertheless, defendant stated that he was cursed, kicked and struck by police officers after his arrest, that he took seven preludin tablets prior to his arrest, and that he had "been shooting drugs for nine or ten years." Based on this questioning, and upon the inconclusive nature of the sanity commission's reports, the district judge determined that defendant was capable of standing trial, and that his manifest incapacity was deliberately staged:
"It's obvious the defendant, from the rap sheet, has extensive knowledge of criminal proceedings and procedures. The defendant has a very selective recall. He remembered his defense, that he was doped up with preludin. He remembered the incidents of the manner in which the officers treated him at the time of the arrest. Yet, he testifies, after sitting through an entire preliminary examination, he doesn't remember anything that was said at that preliminary examination. The Court, after examining the demeanor and the attitude of the defendant, concludes that the defendant is intentionally malingering and attempting to thwart the judicial process by trying to convince people that he ishas a mental disease or defect. This Court concludes that he does not or that the defendant has not demonstrated that there is a mental disease or defect which prevents the defendant from assisting counsel or from understanding the proceeding instituted against him."
When trial was commenced on December 10, the defendant was unable to present any additional evidence relevant to his capacity to stand trial. The trial judge therefore refused to reopen the sanity hearing.
It is fundamental that a defendant without the capacity to understand the proceedings against him or to assist counsel in preparing a defense may not be subjected to trial. C.Cr.P. 641; Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The various criteria which should be considered in evaluating a defendant's capacity to stand trial were articulated by this court in State v. Bennett, 345 So.2d 1129, 1138 (La.1977):
"... Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to wellexplained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial...."
It has been repeatedly held that a defendant must prove his incapacity to stand trial by a clear preponderance of the evidence. *673 State v. Hamilton, 373 So.2d 179 (La.1979); State v. Coco, 371 So.2d 803 (La.1979); State v. Lawrence, 368 So.2d 699 (La.1979); State v. Weber, 364 So.2d 952 (La.1978); State v. Veal, 326 So.2d 329 (La.1976); State v. Flores, 315 So.2d 772 (La.1975); State v. Marks, 252 La. 277, 211 So.2d 261 (1968).
Because the defendant here is an indigent, and forced to rely exclusively upon the findings of the court appointed sanity commission rather than a private physician of his own choice, C.Cr.P. 646, he is entitled to a thorough examination, and ought not be responsible for any lack of diligence by the commission appointed to examine him. State v. Coco, supra; State v. Bennett, supra. Both doctors who testified at the sanity hearing indicated that the defendant's examinations were unproductive. Both concluded that more time was needed to ascertain whether defendant's inability to cooperate was genuine or feigned. The problem was not with the thoroughness of the examinations, but with the futility of examining the defendant. No allegation is made that the two physicians were not conscientious in attempting to complete the task for which they were appointed. That their findings were inconclusive does not indicate that their efforts were not diligent.
Faced with the testimony of two doctors who were reluctant to offer an opinion based upon their fruitless exchanges with the defendant, the district judge questioned the defendant himself. We find no error in this procedure. It is ultimately the responsibility of the judge to determine whether a defendant possesses the mental capacity to proceed to trial. C.Cr.P. 647. The report of the sanity commission is admissible as evidence, but it cannot be used as a substitute for the court's own judgment. State v. Lawrence, supra; State v. Crochet, 354 So.2d 1288 (La.1977); State v. Bennett, supra. Moreover, a trial judge's determination of a defendant's capacity to stand trial is entitled to great weight. State v. Hamilton, supra; State v. Coco, supra; State v. Lawrence, supra; State v. Weber, supra; State v. Morris, 340 So.2d 195 (La.1976); State v. Flores, supra. Here, the trial judge did not refuse to accept the opinion of medical experts: no opinion as to the defendant's capacity to stand trial was offered, other than the suspicion that defendant was malingering. The issue is not whether the sanity commission usurped the judge's function, but whether the judge could reasonably make a determination of defendant's present sanity when the doctors could not.
Accordingly, the evidence adduced at the sanity hearing and the judge's decision must be evaluated in light of the considerations outlined in State v. Bennett, supra. The judge, who had also presided over the defendant's preliminary examination, concluded that the defendant was aware of the charges he faced, despite the fact that defendant said he was charged with indecent exposure. This determination was apparently based upon observation of the defendant's outward demeanor, and upon the fact that defendant occasionally demonstrated an adequate recollection of important events. It was also thought significant that defendant could recall taking seven preludin tablets prior to his arrest, since this allegation dovetailed with defendant's plea of not guilty and not guilty by reason of insanity. The judge concluded that defendant's "almost unbelievably extensive history of criminal activity," including a murder conviction, necessarily indicated that defendant had an awareness of his legal rights and the consequences of conviction. Defendant admitted that he told his lawyer to contact his wife, but was unresponsive when questioned whether he told counsel to contact any other witnesses. Defendant denied being on parole, claiming that he was "free on the street," but admitted to being incarcerated at Angola once. The defendant had only a sixth grade education, but nothing in the record indicates that he is mentally retarded, or that he has ever been treated for mental illness.
Trial was held approximately a month after the sanity hearing was completed. An examination of the trial record supports the finding that defendant understood the *674 charges against him and was able to assist in his own defense. In fact, defendant took the stand and testified as to his history of criminal convictions, noting that he had been "multiple billed" on one occasion. His testimony revealed a familiarity with criminal procedures and processes. Defendant recounted his 1967 conviction for manslaughter and the granting of a new trial in that case. He remembered the length of his imprisonment, the fact of his parole, and the fact that he subsequently "copped out to a simple robbery charge" in 1976.
Moreover, defendant remembered exactly what he had been charged with after his arrestarmed robbery and two counts of attempted armed robbery. But, consistent with his defense of insanity, he stated that he had injected himself with seventy-five milligrams of preludin half an hour before the robbery and lost his memory until the next day; he claimed that, when he took preludin, he began to feel "mean" and "hateful," and that his thoughts became "paranoid." Defendant also said that he was going through a difficult withdrawal period in jail, and that he needed help. On cross-examination, defendant admitted that his memory had been poor when he was examined by the two physicians on the sanity commission, but that some of his memory had now returned.
Dr. Landry took the stand and substantially repeated the testimony given at the sanity hearing. He also observed that, "After listening to [defendant] today, obviously, he is a lot better today than whenthan when I talked to him a month and a half ago. There's no comparison in the two people."
There can be little doubt that, whatever defendant's condition was at the time of the sanity hearing, he was entirely competent to stand trial at the time trial commenced. Whether his "improved" status was a result of withdrawal from drugs or a consequence of the necessity of presenting a defense is not relevant. Under the standards of State v. Bennett, supra, defendant was capable of standing trial: he understood the nature and seriousness of the charge, the character of his own defense, and the consequences of conviction. Defendant was able to remember the events before the offense occurred and testified in a way that was entirely consistent with his defense; from a reading of the record, he was not suffering from a deteriorated mental condition. Although the trial judge's questioning of the defendant did not completely cover the relevant guidelines, defendant's conduct at trial discredited his prior claim of incapacity. A defendant cannot prove the incapacity to stand trial merely by having stymied the efforts of the sanity commission. There was no abuse of discretion in the judge's determination that defendant did not satisfactorily show that he lacked the capacity to understand the proceedings against him or to assist in his defense. The trial record confirms the discretion exercised by the judge.
The conviction and sentence are affirmed.