866 So.2d 1003 (2004)
STATE of Louisiana
v.
Calvin WILLIAMS.
No. 03-KA-942.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
*1005 Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Appellate Counsel, Andrea F. Long, Counsel of Record on Appeal, Kia M. Habisreitinger, Trial Counsel, Martin Bellanger, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Calvin Williams, appeals from his conviction of distribution of cocaine. We affirm.
The Defendant was charged on October 11, 2000 with distribution of cocaine, in violation of La.R.S. 40:967(A). He pled not guilty and filed several pretrial motions, including motions to suppress identification and confession and three motions to appoint a sanity commission. The Defendant was ultimately found competent to stand trial and his motions to suppress were denied.
The Defendant was tried and found guilty as charged by a 12 person jury after a two day trial, which commenced on August 29, 2002. He was then sentenced to *1006 eight years imprisonment at hard labor.[1]
On May 26, 2000, Deputy Allison Dugas of the Jefferson Parish Sheriff's Office was working as an undercover narcotics agent, using the name Megan Carter (Agent Carter). On that day, she drove into Bunche Village in Metairie to purchase drugs. At the corner of Mistletoe and Wilson, she was approached by a black male, later identified as the Defendant, who asked what she wanted. Agent Carter asked the Defendant where she could get "two twenties," two $20 rocks of crack cocaine. The Defendant covered his face with a white rag and asked for the money. Agent Carter gave him $40. In return, the Defendant gave her two off-white, rock-like objects individually wrapped in clear plastic, which later tested positive for cocaine. Agent Carter then left the area.
Agent Carter advised her cover/surveillance agents, Lieutenant Emile Larson and Agent Corey Wilson, who were driving around outside of the neighborhood on a moving patrol, that she had completed a purchase and gave them a description of the Defendant. She described the Defendant as wearing Tommy Hilfiger blue jean shorts with his boxer shorts showing, a short-sleeved white T-shirt and carrying a white rag.
Lieutenant Larson and Agent Wilson waited approximately three minutes before moving into the neighborhood to allow Agent Carter time to safely exit the area. Approximately two blocks from where the drug transaction occurred, Lieutenant Larson and Agent Wilson saw a man, later identified as the Defendant, who fit Agent Carter's description. They called him over to the car. Agent Wilson conducted a field interview to obtain the person's identity and to see if he had more narcotics or contraband on him. The Defendant gave the officer his name, address, date of birth and social security number. No illegal contraband was found. While Lieutenant Larson and Agent Wilson detained the Defendant, Agent Carter drove by at a distance and confirmed that he was the person who had sold her the drugs. She subsequently identified the Defendant in a photographic line-up compiled by Lieutenant Larson. The Defendant was not arrested then, in order to protect the identity of Agent Carter. He was later arrested during a "round up."
Agent Carter's vehicle was equipped with video capabilities. However, she had the wrong camera recording at the time of the transaction. Thus, is no video of the transaction. Agent Carter explained that she had activated the camera facing the passenger's side of the vehicle during the transaction, which occurred on the driver's side of the vehicle. The video, however, did record the audio of Agent Carter and the Defendant during the drug sale.
On appeal, the Defendant asserts that the trial judge erred in failing to appoint a sanity commission and in admitting the field interview card. The Defendant further asserts that the trial judge erred in denying the Defendant's motion for a mistrial.
SANITY COMMISSION
First, the Defendant contends that the trial judge erred on the day before trial, in refusing to grant his motion to order a sanity commission to determine his competency to stand trial. He claims that a report by Dr. Sautter, a psychologist who evaluated him prior to trial, indicated *1007 that he exhibited moderately severe signs of paranoia and was in need of further evaluation. The Defendant alleges that Dr. Sautter's report was sufficient to demonstrate that he was unable to assist in his defense.
The record shows that the Defendant actually filed three motions to appoint a sanity commission. The first motion was filed on February 14, 2001 by his IDB[2] attorney, Michael Somoza. A hearing was held on that motion on May 9, 2001. The Defendant was represented by private counsel, Derrick Shepherd at the hearing. A transcript of the hearing is not contained in the record, but the minute entry reflects that the parties stipulated to a report of April 19, 2001, which concluded that the Defendant lacked the capacity to understand the proceedings against him and to assist in his defense. The report recommended that the Defendant receive outpatient legal-rights education. The minute entry also shows that the hearing was continued at the request of the parties. On the next hearing date, September 27, 2001, the Defendant failed to appear for trial and an attachment was issued.
A second motion for a sanity commission was filed on January 15, 2002. During a hearing on May 15, 2002, the parties stipulated to a report dated April 3, 2002 by Dr. Rafael Salecedo and Dr. Richard Richoux, in which the doctors opined that the Defendant was competent to proceed to trial. The doctors noted in their report that the Defendant had previously been found to be incompetent and that competency restoration services were recommended. The report noted that the Defendant received the recommended services. The trial judge adopted the doctors' recommendation and found the Defendant competent for trial.
A third motion for a sanity commission was made in open court on August 28, 2002, the day before trial.[3] The trial judge denied the Defendant's oral motion stating, "I'm not going to order another sanity hearing based upon what you told me about [defendant]." Thereafter, on the same date, the Defendant filed a written motion for a sanity hearing and attached the report of Dr. Fred Sautter. The next day, prior to the commencement of trial, defense counsel again argued for the appointment of a sanity hearing based on Dr. Sautter's August 28, 2002 report. The Defendant argued that Dr. Sautter's finding that he had moderately severe paranoia and needed further evaluation, warranted the appointment of a sanity commission.
The trial judge denied the motion noting that the Defendant had already been examined by two trained psychiatrists who found him able to understand the proceedings and assist in his own defense. The trial judge further stated that Dr. Sautter was a psychologist who merely conducted a brief interview with the Defendant and noted only that the Defendant may or may not have certain psychological conditions. The trial judge explained that whether the Defendant had psychological problems was not the issue and stated:
I'm certain that many defendants that go to trial have psychological problems, psychological issues, including those mentioned in this report. But as long as they don't interfere with his ability to understand the proceedings against him, his ability to assist his attorney and understand what's going on, then they would not rise to the level to cause me *1008 to grant the action requested by the Defense.
A defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. La.C.Cr.P. art. 642. La.C.Cr.P. art. 641 provides that "Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." The trial judge is only required to order a mental examination of the defendant when he has a reasonable ground to doubt the defendant's mental capacity to proceed. La.C.Cr.P. art. 643; State v. Pugh, 02-171, p. 13 (La.App. 5th Cir.10/16/02), 831 So.2d 341, 349. "Reasonable grounds" refers to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can not understand the proceedings, appreciate the significance of the proceedings, or rationally aid his attorney in his defense. State v. Williams, 02-1016, pp. 8-9 (La. App. 5th Cir.2/25/03), 841 So.2d 936, 942. A defendant's sanity is presumed by the law. La.R.S. 15:432; Pugh, 02-171 at 14, 831 So.2d at 350.
In State v. Bridgewater, 00-1529, p. 14 (La.1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003), the Louisiana Supreme Court stated:
Simply because a defendant's capacity to proceed is called into question by formal motion does not mandate a mental examination be ordered and a sanity commission be appointed.... Appointing a sanity commission is neither a perfunctory matter nor a ministerial duty of the trial court; it is not guaranteed to every accused in every case.... Given the presumption of sanity, before the court is required to appoint a sanity commission, the defendant must establish by a preponderance of the evidence that reasonable grounds exist to doubt his mental capacity to proceed.... A reviewing court owes the trial court's determination on these matters great weight, and the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion.... (Citations omitted).
There must be substantial doubt as to the defendant's mental capacity before refusal to order an examination constitutes an abuse of discretion. Pugh, 02-171 at 13, 831 So.2d at 349.
In Pugh, this Court found no error in the trial judge's refusal to order a fourth competency evaluation. Pugh was found incompetent after the first sanity hearing. He received jail-based education and was subsequently found competent to stand trial. Seven months later, he filed a second motion for a sanity commission and was again evaluated by two psychiatrists. He was again found competent to stand trial. Approximately one and one-half years later, Pugh filed a third motion for a sanity hearing. Two doctors attempted to evaluate him, but he refused to cooperate and the doctors were unable to render an opinion on his competence. A third doctor, apparently retained by the defense, also attempted to evaluate Pugh, but was unable to do so because he was uncooperative. All doctors recommended further evaluation to determine whether Pugh had a mental illness. The trial judge found that Pugh failed to meet his burden of proving he was incompetent.
Prior to trial, Pugh filed ex parte a fourth motion for the appointment of a sanity commission. At the ex parte hearing, defense counsel noted that Pugh had been unable to assist in his defense due to some mental defect and requested a competency *1009 evaluation for him. The trial court denied his request.
In upholding the trial court's refusal to appoint a fourth sanity commission, this Court noted that the last physicians to examine Pugh could not render any opinion on Pugh's competence because he refused to cooperate. We also noted that the record showed Pugh was literate and conversed intelligently.
In reaching its decision in Pugh, this Court relied on State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982) and State v. Holmes, 393 So.2d 670 (La. 1981). In both cases, the Louisiana Supreme Court affirmed the trial courts' ruling, finding the defendants competent to stand trial despite their refusal to cooperate with the evaluation. Furthermore, in both cases, the doctors were unable to render an opinion on the competency of the defendants and recommended further evaluation to determine whether the defendants were incapable of standing trial.
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court listed the following factors to be considered in determining whether a defendant is able to assist in his defense:
[W]hether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
In the present case, Dr. Sautter's report does nothing more than recommend further evaluation. As in Pugh, Edwards and Holmes, this Defendant was uncooperative during the latest evaluation and refused to complete the psychological test that Dr. Sautter attempted to administer. This conduct prevented the doctor from making a psychiatric diagnosis. Although Dr. Sautter noted that the Defendant appeared psychotic at the time of the interview due to extreme paranoid tendencies, he never expressed the opinion that the Defendant lacked the understanding to proceed to trial. To the contrary, Dr. Sautter stated that the Defendant communicated effectively during the interview and exhibited no thought disorders. Although Dr. Sautter's report also noted that the Defendant's distrustfulness would likely interfere with his ability to collaborate with his attorney during the defense process, nothing in the report indicates that the distrustfulness was anything more than manipulative behavior. Dr. Sautter's report merely found that the Defendant may or may not have certain psychological conditions. It does not raise a reasonable doubt as to the Defendant's mental capacity to proceed to trial. The Defendant's distrust of his court-appointed attorney does not render him incompetent. Furthermore, there was nothing in the report to contradict the previous sanity report that found the Defendant capable of assisting in his own defense. In addition, the Defendant testified at trial in his own defense. His answers were responsive to the questions asked and clearly demonstrated his competence. See, Holmes, 393 So.2d at 674, where the Louisiana Supreme Court found that Holmes' conduct at trial "discredited his prior claim of incapacity." Thus, we find that the trial judge did not *1010 abuse his discretion in denying the motion to appoint a third sanity commission.
FIELD INTERVIEW CARD
Second, the Defendant argues that the trial judge erred in allowing the field interview card into evidence, because the State failed to disclose the evidence prior to trial, despite the Defendant's discovery requests. The Defendant maintains that he was prejudiced by the admission of the field interview card because it negatively impacted his defense theory of misidentification. He alleges that his defense was based on the fact that none of the police officers acknowledged or noted in any of their reports that the perpetrator had numerous tattoos and gold teeth. He claims that he was unfairly surprised at trial because the field interview card mentioned the perpetrator's tattoos and gold teeth.
The State responds that the evidence was properly admitted as rebuttal evidence. The State contends that it never intended to use the field interview card during its case in chief, but was required to rebut the Defendant's claim of misidentification presented during his testimony.
Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to respond to the state's case, and to allow a proper assessment of the strength of the state's case. La.C.Cr.P. arts. 716-729; State v. Simmons, 03-20, p. 19 (La.App. 5th Cir.4/29/03), 845 So.2d 1249, 1261. La. C.Cr.P. art. 718 provides for discovery, on motion of the defendant, of documents and tangible evidence which are within the possession, custody, or control of the State when the items sought are (1) favorable to the defendant and material and relevant to guilt or punishment, (2) are intended for use by the state as evidence at trial, or (3) were obtained from or belong to the defendant. Simmons, 03-20 at 20, 845 So.2d at 1261 (emphasis added). Further, discovery is not limited to what is contained in the district attorney's file. See: State v. Lee, 531 So.2d 254 (La.1988).
Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Parent, 02-835, p. 15 (La.App. 5th Cir.12/30/02), 836 So.2d 494, 504, writ denied, 03-0491 (La.10/31/03), 857 So.2d 472. The determination of what constitutes valid and admissible rebuttal evidence is an issue within the sound discretion of the trial court. Id. A trial court's ruling on the admissibility of rebuttal evidence will not be disturbed, except in extreme cases, such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage. Parent, 02-835 at 15, 836 So.2d at 504-505.
During the State's case-in-chief, Agent Wilson testified that he conducted a field interview of the Defendant minutes after the drug transaction. He testified that the field interview was conducted to find out identifying information and to check to see if the Defendant had any narcotic contraband on him. The agent explained that he filled out a card with the Defendant's name, address, and date of birth. No other questions were asked about the field interview card. Rather, the prosecutor asked Agent Wilson whether he got a good look at the Defendant at the time of the field interview, then he moved into a line of questions relating to the photographic lineup.
The other officer at the scene of the stop, Lieutenant Larson, also testified that a field interrogation card was filled out when he and Agent Wilson stopped the Defendant. He explained that the card documented who the Defendant claimed to *1011 be, his address and his social security number. No other questions were asked about the contents of the card.
After the State rested its case-in-chief, the Defendant testified. During his testimony, he denied that the officers stopped him and attempted to cast doubt on the identification made by Agent Carter. The Defendant testified that Agent Carter mistakenly identified him as the perpetrator who sold her the drugs because she did not mention his multiple tattoos or his gold teeth in her description of the perpetrator, which he showed to the court during his testimony.
In rebuttal, the State called Agent Wilson back to the stand. In connection with Agent Wilson's rebuttal testimony, the State sought to introduce the field interview card which noted the Defendant's tattoos and gold teeth. The Defendant objected, claiming that the card was not provided in discovery despite being requested. The State responded that the card came into its possession only within the last five to ten minutes of the trial and only after the Defendant raised the issue of his identification and his tattoos and gold teeth. The trial judge ruled that the field interview card was rebuttal evidence and allowed it into evidence.
The field interview card was not intended for use at trial and was offered to "explain, repel, counteract or disprove" the Defendant's claim that he was not the person stopped by the officers. See; Parent, 02-835 at 15, 836 So.2d at 505. Although a reference was made to the field interview card during the testimony of Agent Wilson and Lieutenant Larson during the State's case-in-chief, the State did not rely on the contents of the card as evidence. Rather, the card was referenced simply to show that the police recorded the identity of the person they stopped and interviewed. The field interview card was offered in rebuttal, because it contained a description of two of the Defendant's tattoos and his gold teeth, as observed by Agent Wilson at the time of the interview. Thus, we find that the trial court did not abuse its discretion in finding the card to be rebuttal evidence.[4]
Furthermore, as rebuttal evidence, the field interview card was not subject to pretrial discovery. We also note that there is no evidence the State withheld the evidence deliberately for the purpose of deceiving and obtaining an undue advantage. Thus, we find that the trial judge did not err in admitting the field interview card as rebuttal evidence.
MISTRIAL
The Defendant argues the trial judge erred in refusing to grant a mistrial after repeated improper remarks by the prosecutor during the State's opening statement and closing argument and by eliciting inadmissible testimony that was highly prejudicial. The Defendant challenges the trial court's denial of several separate requests for a mistrial.
A mistrial is a drastic remedy and, except in instances in which it is mandatory, a mistrial is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Ballay, 99-906, p. 14 (La.App. 5th Cir.2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La.4/20/01), 790 So.2d 13. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial *1012 will not be disturbed on appeal absent an abuse of that discretion. Id.
La.C.Cr.P. art. 770 provides for a mandatory mistrial when:
Upon motion of a defendant, ... a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
A mistrial is discretionary under La. C.Cr.P. art. 771 when a remark or comment made by the district attorney during trial is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury and does not fall within the scope of Article 770. Article 771 provides that, upon the request of the defendant, a trial court shall admonish the jury to disregard the improper remark or comment. In the event that the trial court is not satisfied that an admonition is sufficient to assure the defendant a fair trial, it may grant a mistrial.
A) Improper Opening Statement
The Defendant first complains that the trial judge erred in denying his request for a mistrial during the prosecutor's opening statement. The prosecutor stated, "[a] single battle in the war on drugs will be fought and it will be fought in this very courtroom." The Defendant objected because the case was not about the war on drugs, but rather was the guilt or innocence of the Defendant. Defense counsel then moved for a mistrial, claiming the prosecutor was enlisting the jury in the war against drugs. The trial judge overruled the objection and denied the motion. No further mention of the war on drugs was made by the prosecutor. We agree with the Defendant, but find that the comments do not warrant a mistrial.
La.C.Cr.P. art. 766 provides that the State's opening statement "shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." The opening statement is designed to inform the jury so they may understand the evidence as it unfolds and to protect the defendant from surprise. State v. Green, 343 So.2d 149, 151 (La.1977). Statements made outside the permissible scope of an opening statement may result in a mistrial under La. C.Cr.P. arts. 770 and 771. State v. Robinson, 598 So.2d 407, 412 (La.App. 5th Cir. 1992).
In this case, the comment at issue does not fall within the scope of Article 770 and, therefore, the granting of a mistrial was discretionary. Prior to opening statements, the trial judge instructed the jury that:
[T]he District Attorney will make an opening statement, the Defense counsel *1013 may then make an opening statement if he chooses to do so. The opening statements are not evidence, but are an outline of what the attorneys contend will or will not be shown by the evidence.
At the conclusion of the trial, the trial judge again cautioned the jurors that "[s]tatements and arguments made by the attorneys are not evidence" and, specifically, that "[t]he opening statements and the closing arguments are not to be considered as evidence." The trial judge further instructed the jurors that they were not to be "influenced by sympathy, passion, prejudice, or public opinion."
In State v. Washington, 563 So.2d 530, 532 (La.App. 5th Cir.1990), this Court addressed a similar issue in the context of the State's rebuttal argument. In Washington, the prosecutor, during his rebuttal argument, stated:
"If you don't' think it's a war out there, you haven't been awake for the last couple of years. What's destroying we, the people of the United States, right now and the United States? It's the dope dealer. It's the retail outlet for the cartels that finally funneled down and our kids and our people get the dope, the crack cocaine, the powder cocaine."
This Court found the remarks to be improper, but did not find the remarks to be so inflammatory so as to divert the jury from a decision based on the evidence. We noted that the evidence at trial fully supported the guilty verdict and that the prosecutor's remarks did not influence the jury or contribute to the verdict.
The prosecutor's comments in this case were improper, immaterial and irrelevant and beyond the permissible scope of an opening statement. Therefore, the trial judge should have sustained the objection of the Defendant. However, the comment did not rise to the level of preventing a fair trial, thereby warranting a mistrial. After making the opening objectionable remark, the prosecutor immediately moved on to presenting the facts that the State expected to prove. The prosecutor made no further comments regarding the "war on drugs." Additionally, the trial judge instructed the jury at least twice that opening statement was not evidence. The Louisiana Supreme Court has stated that "a great deal of credit should be accorded to the good sense and fair-mindedness of jurors who have heard the evidence and who know what was and was not proven." State v. Dupre, 408 So.2d 1229, 1234 (La.1982). Here, the evidence at trial was overwhelming against the Defendant. Furthermore, there is no indication that the jurors convicted the Defendant based on the remark by the prosecutor pertaining to the "war on drugs." Thus, a mistrial was not warranted as a result of this remark.
2) Improper Closing Arguments
The Defendant next argues that the prosecutor made improper and prejudicial remarks during her closing argument and rebuttal argument.
Defense counsel moved for a mistrial after the prosecutor stated during closing argument, "It's a fabricated story. It's a defense thrown together at the last second to get him off. That's what he's trying to do, that's what Mr. Somoza is trying to do." Defense counsel argued that the prosecutor was personalizing the case and making a personal attack on him. The trial judge overruled the objection, but warned the prosecutor not to personalize it. We agree with the Defendant, but find that the comments did not warrant a mistrial.
The Defendant again moved for a mistrial when the prosecutor stated in rebuttal argument, "I'm asking you to send a message to the drug dealers like [Defendant] *1014 who deal drugs in our parish". The Defendant moved for a mistrial claiming the remark was "editorializing on the war on drugs" and that it suggested the Defendant was associated with other drug dealers. The trial court denied the motion. We agree with the Defendant on this point too, but find that the comments did not warrant a mistrial.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A prosecutor has considerable latitude in making closing arguments. State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). However, a prosecutor may not turn arguments into a plebiscite on crime. State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998). Additionally, a prosecutor should refrain from making personal attacks on defense strategy and counsel. State v. Simmons, 98-841, p. 17 (La.App. 5th Cir.6/1/99), 738 So.2d 1131, 1140, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333. Nevertheless, a conviction will not be reversed because of improper argument, unless the reviewing court is "`firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.'" Taylor, 93-2201 at 18, 669 So.2d at 375.
In State v. Smith, 31,955, p. 18 (La.App. 2nd Cir.5/5/99), 740 So.2d 675, 687, writ denied, 00-1404 (La.2/16/01), 785 So.2d 840, the prosecutor asked the jury to "send a message to the defendant and his gang members about actions and their consequences." The Second Circuit found a mistrial was not warranted.
Personal attacks were made by the prosecution on the defense counsel in State v. Johnson, 00-0608, p. 14 (La.App. 1st 12/22/00), 775 So.2d 670, 680, writ denied, 02-1368 (La.5/30/03), 845 So.2d 1066. The prosecutor referred to him as the "great finder of truth" and then pointed out his "blatant lie[s]." The prosecutor also appealed to the jurors to represent the city of Baton Rouge in reaching its verdict. The First Circuit found the prosecutor's comments to be improper, but that the comments did not influence the jury's verdict.
In the present case, we find that the prosecutor's comments were improper, immaterial and irrelevant. The trial judge should have sustained the objection to the comments, admonished the prosecutor, and admonished the jury to disregard them. However, the remarks did not fall within one of the mandatory reasons for a mistrial in C.Cr.P. art. 770. Furthermore, considering that the reviewing court must give credit to the good sense and fair-mindedness of the jury,[5] the totality of the evidence against the Defendant in this case, and that the trial court specifically instructed the jury not to consider the closing arguments as evidence, we find that the comments did not contribute to the verdict. Thus, a mistrial was not warranted on this basis.
3) Improper Testimony
The Defendant also asserts the trial court erred in overruling his objections *1015 when the prosecutor elicited improper testimony from Agent Wilson and Lieutenant Larson. The Defendant contends that the testimony was intended to inflame the jury.
During Agent Wilson's testimony, he explained an undercover drug transaction. Agent Wilson explained that three to five people are involved, including the undercover agent and surveillance agents, who were used for the safety of the undercover agent. The prosecutor then inquired, "[w]hy are you worried about the undercover's safety?" The Defendant objected because that the question was designed to inflame the jury and was part of their "war on drugs" theme. The prosecutor responded that the jury had a right to know why surveillance agents were involved. The trial judge overruled the objection, stating that the case was a drug case and the State was simply asking questions about what occurred. Agent Wilson then testified that the undercover agents are sometimes robbed and that the surveillance agents stand ready to help the undercover agent if needed.
The prosecutor later asked Agent Wilson what happened on the day in question. Agent Wilson then discussed neighborhood complaints, civic associations and "round ups." The Defendant objected on the grounds of relevancy and the prosecutor agreed to ask more specific questions.
Lieutenant Larson testified next. During cross-examination, defense counsel objected to Lieutenant Larson's testimony as being non-responsive and pursued a line of questions relating to the towel that the perpetrator used to cover his face during the drug transaction. Counsel inquired into the difference between the perpetrator covering his face with a towel and the person who was stopped holding a towel in his hand. Lieutenant Larson responded, "It's not uncommon now for us to have these kind of problems, because for several years we've been making videotaped undercover buys, and they have been going to court. So, now people are starting to get smart, and when they feel that they might be". Defense counsel moved for a mistrial claiming the response was inflammatory. The trial judge denied the motion.
The Defendant argues that the above testimony amounted to social commentary by the police officers, into ending drug dealing, designed to inflame the jury. The Defendant admits in his brief that each error is "perhaps harmless in isolation" but contends that the cumulative effect is prejudicial.
All relevant evidence is admissible, except where limited by law. La.C.E. art. 402. Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La.C.E. art. 401. Although relevant, evidence may nonetheless be excluded, if the probative value is substantially outweighed by its prejudicial effect. La.C.E. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230, p. 11 (La. App. 5th Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
The Defendant has failed to show that the trial judge abused his discretion in admitting the alleged objectionable portion of Agent Wilson's and Lieutenant Larson's testimony. The Defendant sold drugs to an undercover agent conducting an undercover drug transaction. Both Agent Wilson and Lieutenant Larson testified regarding the procedures used for *1016 undercover drug transactions and various issues involved in such a transaction, such as potential safety and identification problems. That testimony was relevant to show the jury the full picture of an undercover drug transaction. Therefore, we find no error in the above denial of the Defendant's objections.
CUMULATIVE ERRORS
The Defendant contends that the combination of the errors demonstrated a pattern of misconduct that requires reversal of his conviction. We disagree. The Louisiana Supreme Court has been "`unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction or sentence.'" State v. Hotoph, 99-243, pp. 32-33 (La. App. 5th Cir.11/10/99), 750 So.2d 1036, 1055, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-0150 (La.6/30/00), 765 So.2d 1066, quoting State v. Strickland, 94-0025, pp. 51-52 (La.11/1/96), 683 So.2d 218, 239. As stated by the Court in Hotoph, a defendant is not entitled to a perfect trial, only a fair one. Hotoph, 99-243 at 33, 750 So.2d at 1055. The record reveals that the Defendant received a fair trial in this case. Therefore, we find no error in the alleged cumulative errors described above.
The record was reviewed for patent error, pursuant to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Perrilloux, 99-1314 (La.App. 5th Cir. 5/17/00), 762 So.2d 198.
We note that at the time the offense was committed, La.R.S. 40:967(B)(4)(b) required the first five years of the sentence to be served without benefit of probation, parole, or suspension of sentence.[6] The Defendant was not so sentenced herein. However, the mandatory specified and limited restriction on the eligibility of the benefits is self-activating and requires no action by this Court. State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 798-799; State v. Jerome, 03-126, pp. 7-8 (La.App. 5th Cir.4/29/03), 845 So.2d 1194, 1199.
Accordingly, the Defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] The Defendant had five other charges pending, bearing four different docket numbers. Prior to sentencing herein he pled guilty to two of the charges and the remaining three charges were dismissed. The eight year sentence herein was part of the plea agreement therein.
[2] Indigent Defender's Board.
[3] Defendant's retained counsel was allowed to withdraw on May 15, 2002 and the IDB was again appointed to represent him.
[4] See; State v. Hamilton, 99-523 (La.App. 3rd Cir.11/3/99), 747 So.2d 164; State v. Amedee, 408 So.2d 1259 (La.1982).
[5] See, State v. Dupre, 408 So.2d at 1234.
[6] The five years provision was reduced to two years in Acts 2001, No. 403, § 4 which amended portions of La.R.S. 40:967.