STATE OF LOUISIANA IN THE INTEREST OF J.C.

NO. 25-K-452

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

October 08, 2025

Linda Tran
First Deputy Clerk

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Tran
First Deputy, Clerk of Court

**IN RE** J.C.

**APPLYING FOR** SUPERVISORY WRIT FROM THE JEFFERSON PARISH JUVENILE COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JENNIFER G. WOMBLE, DIVISION "A", NUMBER 25-JU-113

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Timothy S. Marcel

**WRIT DENIED**

Relator/juvenile seeks review of the trial court's ruling finding him competent to proceed to juvenile delinquency adjudication. For the following reasons, this writ application is denied.

**Procedural Background**

On July 16, 2025, the Jefferson Parish District Attorney filed a petition alleging that the juvenile, J.C.[1] violated La. R.S. 14:68.4 by twice committing an unauthorized use of a motor vehicle, and La. R.S. 14:67.26(C)(2) by attempting to commit theft of a motor vehicle.

The record indicates that the juvenile's mental capacity to proceed was raised after the State became concerned that he misinterpreted information from the probation officer. The trial court appointed Drs. Sarah Deland and Janet Johnson to a sanity commission to evaluate J.C. regarding his capacity to proceed. On September 2, 2025, Drs. Deland and Johnson conducted the evaluation via Zoom. A written report of their findings was issued on September 3, 2025.

---

[1] In order to maintain the confidentiality of the proceedings, as required by La. Ch.C. art. 412, and pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the juvenile will be used. *See State in Interest of T.L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 315 n.1; *State in Interest of C.L.*, 15-593 (La. App. 5 Cir. 12/23/15), 184 So.3d 187, 188 n.1.

25-K-452                                   1

The trial court held a competency hearing on September 17, 2025. The State called Dr. Deland to testify.[2] The parties stipulated that Dr. Deland was an expert in the field of forensic psychiatry and capable of rendering expert opinions regarding the juvenile's capacity to proceed in accordance with *State v. Bennett*, 345 So.2d 1129 (La. 1977).[3] She testified that the juvenile was "certainly close to being competent." She stated that J.C. was able to answer many of the questions and had some factual deficits but no intellectual impairments. She explained that it was their opinion, after screening tests for attention and concentration, that the juvenile had some difficulty understanding and retaining simple explanations after approximately twenty minutes. She opined that adjustments in medications would likely bring him back to competency quickly. Dr. Deland explained that his mother informed her that he recently had medication changes; she said she did not know whether he had significantly improved from two weeks prior. Dr. Deland testified that she was not clear whether the juvenile's medication adjustment occurred before or after her evaluation and that she would not dispute that it was before. She explained that if the medication was for ADHD, it can take a week or so to show improvements.

Dr. Deland also explained that the juvenile had difficulty identifying the role of the prosecutor and understanding a plea bargain, partly due to his limited exposure to trials. She noted that the juvenile's main issue was his difficulty focusing and concentrating beyond twenty minutes which affected his ability to grasp explanations. Dr. Deland further testified that the juvenile was not found to be psychotic, had no intellectual disabilities, and his thought processes were linear and logical. She acknowledged that he was involved in activities like band and sports, which require concentration and memory. She stated that his sole mental defect was a diagnosis of ADHD when he was five years old. The trial judge suggested taking breaks during the proceedings to accommodate the juvenile's attention span, which Dr. Deland agreed could help the juvenile proceed.

Dr. Deland concluded that the juvenile was not malingering and was "close" to meeting the *Bennett* criteria for competency and agreed that she essentially found that he was not competent due to impairment from ADHD which impacts his ability to concentrate. She summarized that their opinion after the September 2, 2025 evaluation was that J.C. was not competent at the time and that he could benefit from restoration services.

At the conclusion of the hearing, the trial court found that the defense did not prove that the juvenile was incompetent and that J.C. was competent to

---

[2] Also admitted into evidence was the September 3, 2025 report of Drs. Sarah Deland and Janet Johnson.

[3] In *Bennett*, 345 So. 2d 1129, the Louisiana Supreme Court articulated several factors that the trial judge should consider while evaluating the defendant's ability to stand trial. Pertinent inquiries to determine whether the accused can understand the proceedings against him include: his awareness of the nature of the charge and his appreciation of its seriousness, his understanding of available defenses, his ability to distinguish between pleas of guilty and not guilty and the consequences of each, his awareness of legal rights, and his comprehension of the range of possible verdicts and of the consequences of conviction. In assessing the defendant's ability to assist in his defense, the trial judge should consider: the defendant's recall and relation of facts pertaining to his actions and whereabouts at certain times, his ability to assist counsel in locating and examining witnesses, his maintenance of a consistent defense, the defendant's ability to inform his attorney of any distortion or misstatements in the testimony of the other witnesses, his capacity to make simple decisions in response to well-explained alternatives, the defendant's ability to testify in his own defense, and whether his mental condition will deteriorate under the stress of trial.

25-K-452

proceed to juvenile delinquency adjudication. A Judgment with incorporated Reasons was issued on September 22, 2025 in which the trial judge recounted that the doctor testified that the juvenile met the first *Bennett* prong and that her only hesitation as to the second prong was whether the juvenile could concentrate for a significant period of time. The trial judge further found that the juvenile did not need restoration services that he gave age-appropriate answers, and that when the commission explained a question and answer he did not understand, he was able to recall the answer with little hesitation. The trial judge further explained that the juvenile is at an age-appropriate grade level, does well in school, and has not received any special accommodations in school. As to the commission's concern regarding the juvenile's ability to concentrate after twenty minutes, the trial judge stated that breaks could be provided as needed. She further explained that the juvenile is on new medication that should assist with his concentration.

**Discussion**

In this writ application, J.C. contends that the trial court abused its discretion in finding that he has the mental capacity to proceed despite the doctors' contrary recommendation. He asserts that there are gaps in his functional understanding and rational ability to assist counsel.

La. Ch.C. art. 103 states that the provisions of the Children's Code apply in all juvenile proceedings. In a delinquency proceeding in juvenile court, the Code of Criminal Procedure applies only if procedures are not provided for in the Children's Code. La. Ch.C. art. 104. Chapter 7 in the Children's Code contains the procedures used to determine a child's mental capacity to proceed and are set forth in La. Ch.C. arts. 832-838. A child's mental incapacity to proceed may be raised at any time by the child, the district attorney, or the court, and once it is raised, no further steps in the delinquency proceeding should occur until counsel is appointed, and the child is found to have the mental capacity to proceed. La. Ch.C. art. 832.[4]

The issue of the mental capacity of the child to proceed shall be determined by the court after a contradictory hearing. La. Ch.C. art. 836(A). La. Ch.C. art. 837(A) provides the law regarding the procedure after determination of mental capacity as follows: "If the court determines that the child has the mental capacity to proceed, the delinquency proceedings shall be resumed." La. Ch.C. art. 837(B) states, "If the court determines by a preponderance of the evidence that the child lacks the mental capacity to proceed and the alleged

---

[4] It appears the Children's Code does not expressly address whether there is a presumption of competency in juvenile proceedings. As stated above, a child's mental incapacity to proceed must be raised. *See* La. Ch.C. art. 832. As such, it appears it may be implied that if it is not raised, there is a presumption that the child is competent. S*ee State ex rel. D.J.*, 06-1491 (La. App. 4 Cir. 5/16/07), 959 So.2d 543, 548, where the fourth circuit did not explicitly address that there was a presumption of competency but ultimately concluded that the juvenile court did not err in finding that the presumption of sanity was unrebutted.

There is an established presumption of sanity in non-juvenile proceedings. There, every criminal defendant has a due process right not to be tried while incompetent, or, put another way, to be tried only when competent to assist counsel and understand the nature of the proceedings against him. *See State v. Willie*, 17-252 (La. App. 5 Cir. 12/20/17), 235 So.3d 1339, 1345. A defendant is presumed sane. *See* La. R.S. 15:432. Although relying on non-juvenile law, it appears this presumption has been applied to a juvenile case by the first circuit. *See State in Interest of T.O.T*, No. 2015 KJ 0611, 2015 WL 5546724 (La. App. 1 Cir. Sep. 21, 2015).

3

delinquent act is a felony," the proceedings shall be suspended, and the court may take certain delineated actions.

In *State v. Coco,* 371 So.2d 803, 805 (La. 1979), the Louisiana Supreme Court stated that a trial court's determination of capacity to stand trial is entitled to great weight. However, the trial court may not rely so greatly on the medical testimony that he abandons the ultimate decision on competency to the medical experts. *State ex rel. C.P.*, 06-889 (La. App. 4 Cir. 2/7/07), 952 So.2d 758, 761.

In *State in Interest of J.C.*, 53,225 (La. App. 2 Cir. 11/20/19), 316 So.3d 1232, one doctor found the juvenile, who was fourteen years old, demonstrated marginal intellectual functioning, with related immaturity in reasoning and decision making. Another doctor stated the juvenile suffered a mental defect of ADHD and conduct disorder and that his intellect was estimated in the borderline range. The trial court determined, by a preponderance of the evidence, that the juvenile was competent and had the mental capacity to proceed at trial. The court also ordered restoration services before trial. *Id.* at 1235. The juvenile then completed and passed the juvenile competency restoration classes. At the beginning of the adjudication hearing, the trial court noted that breaks would be taken approximately every hour to help the juvenile's ability to focus and that additional breaks could be requested. *Id.*

The appellate court found that the trial court did not err in determining that the juvenile had the mental capacity to proceed and that its finding was supported by the record. The juvenile court considered the reports and testimony of both doctors and found that he had the requisite capacity to proceed. Neither doctor came to a conclusion regarding his mental capacity to proceed and, instead, left that determination to the trial court. Although the trial court found that, by a preponderance of the evidence, the juvenile had the mental capacity to proceed, it had reservations about certain defects noted by the doctors and ordered restoration services to ensure that any deficiencies were corrected prior to trial. At the adjudication hearing, the trial court provided the accommodations suggested by a doctor, used simple language, and provided frequent breaks. For those reasons, appellate court found no error. *Id.* at 1238.[5]

In *State In Interest of C.T.H.*, No. 2011 KJ 1904, 2012 WL 4335395 (La. App. 1 Cir. Sep. 21, 2012), despite two reports indicating determinations of competency by both examining physicians, the juvenile court found that counsel for the child met their burden of proving that the child was incompetent to assist counsel in the matter. In addition to the reports, the court considered testimony

---

[5] *See also State v. Holmes*, 393 So.2d 670 (La. 1981), where both of the doctors appointed to the sanity commission said the defendant was uncooperative and thus his examinations were unproductive. The doctors stated more time was needed to ascertain whether the defendant's inability to cooperate was genuine or feigned. The doctors were reluctant to offer an opinion based on fruitless exchanges with the defendant. The trial court questioned the defendant and found that he was capable of standing trial and that his manifest incapacity was deliberately staged. *Id.* at 671-73. The Louisiana Supreme Court found no error. It held, "It is ultimately the responsibility of the judge to determine whether a defendant possesses the mental capacity to proceed to trial. The report of the sanity commission is admissible as evidence, but it cannot be used as a substitute for the court's own judgment." The Court concluded there was no abuse of discretion in the trial court's determination that the defendant did not satisfactorily show that he lacked the capacity to understand the proceedings against him or to assist in his defense. *Id.* at 673.

*See also State v. Richard*, 24-30 (La. App. 1 Cir. 3/21/25), 408 So.3d 529, 543, where the appellate court upheld a trial court's ruling that the defendant was competent even though Dr. DeLand was fifty-one percent in her determination that the defendant was incompetent and Dr. Richoux found he lacked sufficient information to make a determination.

presented at the hearing. A later report stated restoration was completed, yet the juvenile court cautiously ordered the continuation of restoration services and did not find the child competent to proceed until a fourth competency determination. The appellate court explained that at that time, the juvenile court was apparently confident in the child's decisional capacity. The court found that any subsequent IQ test result did not negate the evidence before the juvenile court judge at the time of its determination. The appellate court found ample support for the juvenile court's conclusion.

In *State ex rel. C.P.*, 952 So.2d at 761, although the opinions of the mental health professionals who evaluated the juvenile differed to some degree, the consensus was that the juvenile suffered from severe mental disorders. Both members of the sanity commission offered opinions in their reports on the issue of the juvenile's competence to stand trial. One doctor found that the juvenile had a general understanding of the roles of the various courtroom personnel and of courtroom procedures and had the capacity to assist in his defense. The other doctor found that the juvenile had difficulty appreciating the adversarial nature of the proceedings against him and did not appreciate his right to avoid self-incrimination. She stated in her report that it was her opinion with reasonable medical certainty that the juvenile continued to suffer from a severe and worsening mental disease that impeded his capacity to understand the nature and objectives of the proceedings against him and to assist with his defense. The appellate court found that there was ample evidence in the record to support the trial court's conclusion that the juvenile was not competent to stand trial. *Id*. at 762.

In this matter, we find that the trial court did not err in finding the juvenile has the mental capacity to proceed. Drs. Deland and Johnson indicated that the juvenile was not psychotic, had no intellectual disabilities, and that his thought processes were linear and logical. The juvenile was in an age-appropriate grade, played sports, and played an instrument. He did not have accommodations in school or an IEP. Dr. Deland acknowledged that the juvenile was borderline competent, describing the decision as a close call. The doctors' opinions appear to be based solely on the juvenile's inability to focus for an extended period of time, which it appears will be accounted for. Dr. Deland testified that if the court was willing to take a break every twenty-five minutes or so, the juvenile may be able to proceed. The trial judge agreed to take such breaks and to break as requested. Also, the trial judge established that given the evaluation was done over Zoom, it was unclear what kind of environmental factors could have distracted the juvenile during the evaluation. The trial judge further set out that the juvenile had several other matters in juvenile court, including previously "pleading guilty," suggesting that the juvenile was familiar with juvenile court proceedings. As indicated by the trial judge, the juvenile may have provided questionable answers to some of the doctors' questions based on his prior experiences and the different terminology used in juvenile court.

In this matter, Dr. Deland opined that adjustments in medications would likely bring him back to competency quickly. She also testified that the juvenile's mother informed her that he recently had medication changes; she said she did not know whether he significantly improved from two weeks prior. Dr. Deland stated that she was not clear whether the juvenile's medication adjustment occurred before or after her evaluation and that she would not

dispute that it was before. As such, it appears the juvenile may since be taking new medications and may have already improved.

The issue of the mental capacity of the child to proceed is determined by the court. *See* La. Ch.C. art. 836(A). The court is not bound by the conclusion of medical experts but is the ultimate decision maker regarding a juvenile's competency. The evidence presented at the competency hearing supports the trial court's conclusion that the juvenile has the mental capacity to proceed in contravention of the medical experts' opinion. We find no abuse of discretion in this matter.

Accordingly, this writ application is denied.

Gretna, Louisiana, this 8th day of October, 2025.

**TSM**
**SMC**
**FHW**

6

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **10/08/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**25-K-452**

### E-NOTIFIED

Juvenile Court (Clerk)
Honorable Jennifer G. Womble (DISTRICT JUDGE)
Barry S. Ranshi (Relator)

Thomas J. Butler (Respondent)
Mark D. Plaisance (Relator)

### MAILED

Leigh A. Sakla (Relator)
Attorney at Law
1546 Gretna Boulevard
Harvey, LA 70059

Remy V. Starns (Relator)
Attorney at Law
301 Main Street
Suite 700
Baton Rouge, LA 70825

Marcus J. Plaisance (Relator)
Attorney at Law
Post Office Box 1123
Prairieville, LA 70769

Richard L. Olivier (Respondent)
Assistant District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053